**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Bradley Circle Vacation Partners, LLC, and Monti Development HH, LLC, Appellants,

v.

Town of Hilton Head Island, Town of Hilton Head Island Board of Zoning Appeals, Tamara Becker and Rhonda Carper, Respondents.

Appellate Case No. 2019-000314

————————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

————————

Unpublished Opinion No. 2022-UP-232
Heard March 8, 2022 – Filed June 1, 2022

————————

**AFFIRMED**

————————

Drew A. Laughlin, of Laughlin & Bowen, PC, of Hilton Head Island, for Appellants.

Curtis Lee Coltrane, of Coltrane & Wilkins, LLC, of Hilton Head Island, for Respondents.

Tamara Becker and Rhonda Carper, both of Hilton Head, pro se.

————————

**PER CURIAM:** Bradley Circle Vacation Partners, LLC and Monti Development HH, LLC (collectively, Appellants) appeal the master-in-equity's order affirming the Town of Hilton Head Island board of zoning appeals' (BZA) decision overruling a determination made by the Town's director of community development (the Official). Appellants contend the BZA's March 28, 2016 approval of certain setback and buffer variances for 28 Bradley Circle and 3 Whelk Street, both in the Bradley Circle neighborhood, constituted approval of a site specific development plan[1] for the subject properties. Relying on this approval, Appellants argue they have a vested right to build two single-family homes with a maximum height of seventy-five feet above base flood elevation (BFE) and are not bound by the more restrictive height limitation in effect in August 2017, when they applied for building permits.[2] We affirm.

Initially, Respondents urge us to find Appellants have failed to make a proper argument challenging the BZA's factual finding that Appellants did not submit a site specific development plan with their initial variance application. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set

---

[1] "'Site specific development plan' means a development plan submitted to a local governing body by a landowner describing with reasonable certainty the types and density or intensity of uses for a specific property or properties. The plan may be in the form of, but is not limited to, the following plans or approvals: planned unit development; subdivision plat; preliminary or general development plan; *variance*; conditional use or special use permit plan; conditional or special use district zoning plan; or other land use approval designations as are used by a county or municipality." S.C. Code Ann. § 6-29-1520(9) (Supp. 2021) (emphasis added). Section 16-2-102.J.1.a of the Land Management Ordinance (LMO) provides the following: "Approval or conditional approval of an ***application for a Special Exception, Major or Minor Subdivision Review, Major or Minor Development Plan Review, Small Residential Development Review, and a Variance shall constitute approval of a site specific development plan that establishes a vested right in accordance with the Vested Rights Act, S.C. Code Ann. § 6-29-1510 et seq.* . . ."** (emphasis in original).

[2] The zoning classification for these two properties was Resort Development (RD) in 2016, when Appellants applied for the setback and buffer variances. In April 2017, the Town amended its LMO, reducing the maximum height for single-family homes in RD zoning districts from seventy-five feet to forty-five feet above BFE.

forth in the statement of the issues on appeal."); *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) ("Under the [two-issue] rule, [when] a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case.") *abrogated on other grounds by Repko v. Cnty. of Georgetown*, 424 S.C. 494, 505, 818 S.E.2d 743, 749 (2018).  Respondents contend Appellants have argued only that the decisions of the BZA and circuit court were controlled by errors of law.  We disagree with this characterization of Appellants' argument.

Although Appellants did not use the words "factual finding" in their statement of issues, their primary argument is that the master erred in affirming the BZA's findings that the 2016 approval did not constitute approval of a site specific development plan nor establish a vested right to build the structures at the greater height permitted prior to the amendment of the LMO.  This argument necessarily includes a challenge of the BZA's factual finding regarding Appellants' variance application submission.  Moreover, Appellants' arguments addressing the factual finding are reasonably clear from the arguments set forth in their opening brief to this court.  *See Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011) ("When an issue is not specifically set out in the statements of issues, the appellate court may nevertheless consider the issue if it is *reasonably clear* from an appellant's arguments.").

Nevertheless, we affirm the master-in-equity's orders affirming the BZA's 2018 decision overruling the Official's determination.  In response to a letter from Appellants' counsel, the Official opined the BZA's 2016 approval of the setback and buffer variances constituted approval of a site specific development plan and established a vested right[3] for the landowner to build the proposed homes to the

---

[3] "'Vested right' means the right to undertake and complete the development of property under the terms and conditions of a site specific development plan or a phased development plan as provided in this article and in the local land development ordinances or regulations adopted pursuant to this chapter."  S.C. Code Ann. § 6-29-1520(10) (Supp. 2021).  "A vested right is established for two years upon the approval of a site specific development plan."  S.C. Code Ann. § 6-29-1530(A)(1) (Supp. 2021).  "A vested right established by this article and in accordance with the standards and procedures in the land development ordinances or regulations adopted pursuant to this chapter is subject to the following conditions and limitations: (1) the form and contents of a site specific development plan must be prescribed in the land development ordinances or regulations. . . ."  S.C. Code Ann. § 6-29-1540(1) (Supp. 2021).  These code

maximum height of seventy-five feet allowed by the LMO in 2016.  In overruling this determination, the BZA made the following finding of fact: "The previous variance application, VAR-352-2016, did not include a site specific development plan as defined in South Carolina State Code Section 6-29-1520."

The BZA's conclusion of law followed:

> Without a site specific development plan, the granting of the variances in VAR-2016 did not create a vested right, as defined by South Carolina State Code Section 6-29-1520, to build at any particular height.  Absent any such vested right, the height restriction is 45 feet above base flood elevation as set forth in the current RM-8 zoning[4] of the property.

Both the South Carolina Vested Rights Act—and the LMO the Town promulgated in accordance with it—specifically reference "a variance" in the context of vested rights established "upon the approval of a site specific development plan."  *See* S.C. Code Ann. § 6-29-1530(A)(1) and § 6-29-1520(9); LMO § 16-2-102.J.1.a. But, like the BZA, the master found Appellants "never filed with the Town or the BZA a site specific development plan ("Site Plan") for the subject property, containing the elements required by LMO Appendix D-19.A.2 and A.4."  The LMO specifies what must be submitted with a variance application, including but not limited to:

> A.2 A *site plan* at a scale of 1"=30' accurately showing the variance(s) requested.  If the *application* is for a variance of Sec. 16-6-102.D, Wetland Buffer Standards, the survey must be certified by the permitting authority.
>
> A.4 written narrative explaining in detail the variance(s) requested and how the criteria of Sec. 16-2-103.S.4,

---

sections are part of the South Carolina Vested Rights Act.  *See* S.C. Code Ann. §§ 6-29-1510 to -1560 (Supp. 2021).

[4] In 2018, the zoning for the district for 28 Bradley Circle and 3 Whelk Street was changed from RD to RM-8 (Moderate Density Residential), which allows a maximum height of forty-five feet above BFE.

> Variance Review Standards, apply to the variance
> request.

LMO Appendix D-19.A.2 and A.4.  Section 16-10-105 of the LMO defines a "Site Plan" as a "detailed engineering plan to scale showing *uses* and *structures* for a *parcel* of *land* as required by this *Ordinance*."

The site plan Appellants submitted with their variance application for 28 Bradley Circle and 3 Whelk Street was neither drawn to scale nor specific as to the heights of the proposed homes; the application sought setback and buffer variances, addressing only the horizontal footprint of the proposed structures, not the vertical aspects.  At the hearing before the master-in-equity, Appellants stated:

> And there was a lot of discussion about the not to scale
> drawings that were submitted.  And, you know, even
> though they're not to scale, they do contain some
> dimensions.  And I will tell you that some of those
> elevations scale out to—one of them is 58 feet.  One of
> them scales out to 45 feet, I believe.[5]

Although the record reflects there was much discussion about the height of the proposed homes before the BZA—neighborhood concerns about height, parking, and safety are referenced, as is a height allowance of "up to 75 feet"—we are unable to find any consensus regarding the height of the proposed structures depicted in Attachment H to Appellants' variance application.  In fact, Appellants admitted "there's nothing that tells you what the exact height of the buildings are."

Likewise, the Official presented the following testimony at the March 26, 2018 BZA hearing: (1) Attachment H did not specify the height of the proposed homes for 28 Bradley Circle and 3 Whelk Street; (2) because Attachment H lacked information as to the height of the homes, the Town planning staff made its own determination regarding height; (3) Attachment H showed "four stories over parking," which is neither defined in the LMO nor has any specific meaning; and (4) the Official's initial height determination of seventy-five feet was incorrect—

---

[5] At this hearing, Appellants also referenced a "settlement agreement of the appeal of the variances."  A recorded "Settlement Agreement and Restrictive Covenants" appears to be the settlement of an appeal from the BZA's 2016 granting of the horizontal footprint variance requests.  This prior agreement does not address the heights of the proposed structures.

her new calculation of fifty-two feet one and a half inches was "based on the approved elevation drawings of the recently constructed houses in the area."

Respondent Becker testified at the 2018 hearing that the ordinance reducing the maximum height for the two proposed structures from seventy-five to forty-five feet came about due to the 2016 outcry of residents concerned that a proposed "towering mini hotel disguised as a single family home was affecting the neighborhood." In opposing Appellants' argument that the BZA's approval of the variance application vested their rights in the prior seventy-five-foot height limit, Becker summarized the objections as: the lack of a proper site plan, the ordinance pending at the time of the 2016 variance application, the builder's self-imposed hardship, and the builder's failure to provide the height measurements in either a "to scale" site plan or the written narrative required by LMO Appendix D-19.

Because Attachment H to Appellants' variance application is not drawn to scale and does not show the heights of the proposed homes with "reasonable certainty," we find the master correctly affirmed the BZA's finding that its 2016 approval did not constitute approval of a site specific development plan as defined by the LMO. *See Boehm v. Town of Sullivan's Island Bd. of Zoning Appeals*, 423 S.C. 169, 185, 813 S.E.2d 874, 882 (Ct. App. 2018) ("All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." (quoting *Eagle Container Co. v. Cnty. of Newberry*, 379 S.C. 564, 570, 666 S.E.2d 892, 895 (2008))); *id.* ("'[W]ords in a statute must be construed in context,' and 'the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute.'" (quoting *Eagle Container Co.*, 379 S.C. at 570, 666 S.E.2d at 895–96)); *Arkay, LLC v. City of Charleston*, 418 S.C. 86, 91, 791 S.E.2d 305, 308 (Ct. App. 2016) ("The appellate court gives 'great deference to the decisions of those charged with interpreting and applying local zoning ordinances.'" (quoting *Gurganious v. City of Beaufort*, 317 S.C. 481, 487, 454 S.E.2d 912, 916 (Ct. App. 1995)). Appellants failed to comply with LMO Appendix sections D-19.A.2 and A.4, which require both a site plan "at a scale of 1"=30'" and a written narrative.

In light of the BZA's findings addressing the 2016 variance application and the submission requirements of the Town's LMO, we find Appellants' rights are vested only as to the horizontal setback and buffer variances and not as to the greater height allowance in effect prior to the Town's 2017 amendment of its LMO.

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**