719 S.E.2d 282

**Donald NEWTON, Jean Flagg–Newton and James C. Hudson, Plaintiffs,**

**Of whom Donald Newton and Jean Flagg–Newton are, Appellants,**

v.

**ZONING BOARD OF APPEALS FOR BEAUFORT COUNTY, Respondent.**

No. 4907.

Court of Appeals of South Carolina.

Heard Sept. 13, 2011.

Decided Nov. 9, 2011.

Rehearing Denied Dec. 22, 2011.

Arthur C. McFarland, and Veronica G. Small, both of Charleston, for Appellants.

Robert W. Achurch, III, Jason Franklin Ward, and Mary Bass Lohr, all of Beaufort, for Respondent.

PER CURIAM.

After the Zoning Board of Appeals for Beaufort County (Board) issued a special use permit for additional construction on the site of an existing convenience center [1] (the DOC) on Daufuskie Island, Donald Newton and Jean Flagg–Newton (collectively the Newtons) appealed the Board's decision to the circuit court. The matter was referred to a master-in-equity, who affirmed the Board's decision. The Newtons appeal, arguing the master erred in affirming the Board's decision not to require a Community Impact Statement (CIS).[2] They contend the master erred in finding: (1) a CIS was not required; (2) the Beaufort County (County) ordinance governing convenience centers (section 106–1362) does not apply to uses within the Daufuskie Community Preservation District; (3) the Board knew the impact of the existing DOC and, therefore, did not need to consider a CIS; and (4) section 106–552 of the Beaufort County Code of Ordinances (Code) controlled the consideration for approval of the special use permit

---

**1.** A "convenience center" is any location authorized by the County as a collection point for residential solid waste. Beaufort Cnty. Code of Ord. § 62–3 (Art. I) (1982).

**2.** A CIS is a report assessing the proposed change's impact on the area, the environment, traffic, and archaeological sites. Beaufort Cnty. Code of Ord. § 106–367(g)(1) (Art. III, Div. 2, Subdiv. II) (2004). "The purpose of the CIS is to (i) determine if alternatives would avoid the adverse impacts, (ii) determine that the plan selected minimizes the impact, and (iii) identify mitigation measures that would offset the impacts." *Id.*

in this case. We affirm and modify the master's decision as discussed below.

## FACTS

In 2009, a contractor acting on behalf of Beaufort County applied to the Board for a special use permit to perform additional construction on the site of the DOC, which is located within the Daufuskie Island Community Preservation District. The County proposed to bring the DOC into greater compliance with County requirements by installing a fence, a swale for stormwater runoff, and three trash compactors, thereby reducing the cost of hauling away the collected trash and making the site safer and cleaner.

On December 10, 2009, the Board held a public hearing at which the Newtons and others spoke. According to the County, the improvements required a special use permit because the DOC predated the County's zoning ordinances and did not conform to them. The Newtons opposed the issuance of a special use permit, arguing such a permit would constitute "spot-zoning," did not comport with the County's comprehensive plan for development, and would conflict with the development of adjacent recreational property. Moreover, the Newtons expressed concern that the proposed construction would expand the DOC, making it a waste processing site for housing developments that had been handling their own waste disposal. In response to the Newtons' concerns, David Coleman of the County's Building and Engineering Department explained the proposed improvements would not expand the DOC but instead would utilize previously cleared land to surround the DOC with buffer zones as required by ordinance. In addition, the installation of compactors would enable the DOC to process the same amount of trash as before but would reduce the need for hauling by fifty to sixty percent. According to Coleman, an existing restriction against commercial dumping at the DOC would continue to prevent the dumping of waste collected within the island's housing developments.

The Board unanimously approved the request for a special use permit. On January 28, 2010, it issued the permit, subject to certain conditions, in accordance with "Article III, Subdivision IV, Special Uses, Section 106–554, of the Zoning and

Development Standards Ordinance." [3] Shortly thereafter, the Newtons appealed the Board's decision to the circuit court.

On May 19, 2010, the master heard arguments on the issues briefed by the parties. A month later, the master issued an order "deny[ing] the appeal," in which he effectively affirmed the Board's decision. Specifically, the master found the ordinance governing convenience centers does not apply within Community Preservation districts. Rather, he determined the Board "only needed to consider the criteria for approval of a special use permit under [section] 106–552" and was not required to order a CIS because the impact of the existing DOC was already known. This appeal followed.

## STANDARD OF REVIEW

■ Generally, appeal from a final order of the circuit court following its review of the zoning board's decision is to the court of appeals. S.C.Code Ann. § 6–29–850 (2004); Rule 203(d), SCACR. Appellate courts regard appeals from zoning decisions in the same manner as appeals from other circuit court judgments in law cases. *Petersen v. City of Clemson,* 312 S.C. 162, 169–70, 439 S.E.2d 317, 322 (Ct.App.1993) (citing *Bishop v. Hightower,* 292 S.C. 358, 360, 356 S.E.2d 420, 421 (Ct.App.1987)). Even if a court disagrees with a zoning board's decision, the court will refrain from substituting its judgment for that of the zoning board unless the decision "is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the [zoning] board has abused its discretion." *Rest. Row Assocs. v. Horry Cnty.,* 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *Cnty. of Richland v. Simpkins,* 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct.App.2002).

## LAW/ANALYSIS

### I. Preservation

As a threshold issue, the Board contends the Newtons' arguments on appeal are unpreserved because the Newtons

---

3. Section 106–554 of the Code (1999) allows the Board to amend, extend, vary, or alter an existing special use permit "only pursuant to the standards and procedures for the approval of the original use."

failed to raise these arguments to the Board during the administrative process. We disagree.

The Board's argument overlooks the issue identification requirements of the statute governing appeals from decisions by zoning boards, as well as the non-adversarial nature of administrative proceedings. Appeal from a decision by a zoning board of appeals is to the circuit court. S.C.Code Ann. § 6–29–820 (Supp.2010). Any "person who may have a substantial interest in any decision" by the Board may initiate an appeal of that decision by filing with the circuit court a "petition in writing setting forth plainly, fully, and distinctly why the decision is contrary to law." *Id.* The circuit court may not take additional evidence and "must determine only whether the decision of the board is correct as a matter of law." S.C.Code Ann. § 6–29–840(A) (Supp.2010).

█ This procedure does not allow for issue identification,[4] or even party identification, prior to the filing of a petition with the circuit court. The statute does not require the appellant to attend a public hearing on the Board's decision or even to communicate his concerns to the Board prior to filing his petition with the circuit court. Thus, the sole preservation requirement for a first-level appeal of a zoning board's decision is that an appellant must set forth his issues on appeal in a written petition and file that petition with the circuit court before the thirty-day filing period expires. Here, the Board rendered its decision on January 28, 2010. The Newtons filed their petition outlining the grounds for their appeal on February 26, 2010, which was within the thirty-day filing period. The Board does not contend that this petition failed to identify the grounds for appeal. Therefore, the grounds for appeal identified in the Newtons' petition were properly before the master.

## II. Convenience Center Ordinance (Section 106–1362)

The Newtons assert the master erred in finding the requirements of the County ordinance governing convenience centers

---

4. *See Austin v. Bd. of Zoning Appeals,* 362 S.C. 29, 37–38, 606 S.E.2d 209, 213–14 (Ct.App.2004) (describing differences between adversarial trial proceedings and administrative proceedings in which circuit court acts in appellate capacity and finding statutory scheme does not permit amendment of grounds for appeal after thirty-day filing period expires).

(section 106–1362, Article V, Division 2) do not apply to uses in the Daufuskie Community Preservation District. We disagree.

The standards governing limited and special uses in Article V, Division 2, cover uses "designated in the general land use table 106–1098. These standards are in addition to other standards required elsewhere in this chapter, as well as building code requirements, and further supersede certain standards in [A]rticle VI of this chapter." Beaufort Cnty. Code of Ord. § 106–1126 (Art. V, Div. 2, Subdiv. I) (1999). The ordinance governing convenience centers appears in Article V, Division 2. *See* Beaufort Cnty. Code of Ord. § 106–1362 (Art. V, Div. 2, Subdiv. VIII) (2003) (describing limited and special use standards for convenience centers in "all applicable districts," including types of waste accepted, buffer zones, lighting, and CIS requirement).

The general land use table in section 106–1098 (the Table) details standards for eleven distinct types of land use districts, each of which the Table classifies as either a Priority area or a Rural area. Beaufort Cnty. Code of Ord. § 106–1098 (Art. V, Div. 1) (2009). The Table does not describe standards for Community Preservation districts, Transitional Investment areas, or special districts. *Id.* A note following the Table indicates Community Preservation standards are located in one of the appendices to Chapter 106.[5]

■ We affirm the master's determination that the standards described in the Table, and consequently the provisions of section 106–1362, do not govern Community Preservation districts. Although the Newtons accurately assert the Code indicates in several places the coverage of its provisions is layered, we find no indication the coverage of Article V, Division 2, or of section 106–1362 specifically, extends to Community Preservation districts. As the master observed,

---

5. The note refers to Appendix E, which appears to be a scrivener's error. Appendix D contains Community Preservation standards, while Appendix E lists trees and plants recommended for use in landscaping. Furthermore, while Appendix D applied to the Daufuskie Community Preservation District at the time of the Board's and master's decisions, its applicability ceased in February 2011. Standards for Daufuskie Island now appear in the Daufuskie Island Code (Chapter 106, Appendix S, of the Code).

section 106–1126 states that Article V, Division 2, applies to the land uses designated in the Table. However, no mention of Community Preservation standards appears within the body of the Table. Instead, a note appearing below the Table offers a reference for where a reader may locate those standards. § 106–1098. Because the Table itself does not include the standards for Community Preservation districts, the master correctly reasoned that section 106–1362 does not apply to Community Preservation districts.

## III. Known Impact

Next, the Newtons assert the master erred in finding that because a convenience center already existed on the parcel at issue and the reviewing staff did not determine a CIS was required, the center's impact was known and the Board did not need to consider a CIS. We disagree.

The division entitled "Discretionary Reviews" authorizes the County's staff to determine whether an applicant must submit a CIS as part of his application for a special use permit. Beaufort Cnty. Code of Ord. § 106–552 (Art. III, Div. 3, Subdiv. IV) (2004). The procedure for such a review requires that the DRT examine the applicant's special use development plan and recommend whether the Board should approve the permit. *Id.* The special use development plan must address whether the proposed use is consistent with the "purposes, goals, objectives, and policies" of the County's comprehensive development plan, is compatible with the character of nearby land, and minimizes any adverse effects. *Id.* The Board may require submission of a CIS or traffic impact analysis if its staff determines those reports are needed. *Id.*

We affirm the master's determination that section 106–552 permitted the Board to use information already in its possession to decide whether a CIS was necessary. The Board had to consider the impact of the improvements, not merely of the DOC itself. The prior existence of the DOC was less crucial to this determination than the information about the proposed improvements that the reviewing staff had in hand. Section 106–552 required the County to submit with its permit application a special use development plan addressing how the improvements to the DOC would affect the character

of nearby land and how the County intended to minimize any adverse effects. We find such a document,[6] as described in section 106–552, would provide the DRT and the Board with information useful in determining the proposed improvements' compatibility with the County's comprehensive development plan and projected impact on nearby property. In addition, the County's application materials suggest any adverse effects of the proposed improvements on the area would be minimal. According to the application, the improvements would affect the manner of handling solid waste at the existing site by providing a "more efficient, cleaner facility" and would "enhance the aesthetic quality of the island." Consequently, the DRT and the Board could decide, based upon the information already in hand, whether to order a CIS.

Furthermore, the evidence in the record does not support the Newtons' contention that the proposed improvements would result in a "more intensive use" of the DOC. The Newtons appear particularly concerned that the Board lacked information that the DOC's compaction capability would invite a greater volume of waste. At the public hearing, Coleman indicated the installation of trash compactors was intended to reduce hauling costs. Coleman stated the improvements were aimed at making the DOC "much safer, much cleaner, much more sanitary, and presentable." Neither Coleman nor Bobby Lee of Thomas & Hutton Engineering Company, who also spoke, advised the Board that any proposed improvement was intended to prepare the DOC to handle an increased volume of waste. Moreover, no evidence indicated the improved DOC would begin accepting additional types of waste or waste from different sources.[7] Thus, the Newtons' concerns are speculative. In view of these facts, the master did not err in finding section 106–552 did not require the Board to order a CIS.

6. Neither the record nor the parties' arguments on appeal reflect a challenge to the completeness of the application as it relates to compliance with section 106–552. In particular, we note the Newtons never raised the issue of whether the County's application included a special use development plan.

7. We note the DOC predates the implementation of Appendix D, and Coleman informed the Board the DOC was restricted from accepting commercially collected waste. He further stated that restriction would remain in effect.

## IV. Discretionary Review under Section 106–552

The Newtons also assert the master erred in finding that only section 106–552 controlled the Board's consideration of the special use permit in this case because the preceding section, which outlines the scope of the entire subdivision, invokes the Table from section 106–1098. We disagree but modify the language of the master's order as discussed below.

Article III, Division 3, Subdivision IV, governs the discretionary review of applications for special use permits:

Certain land uses and developments present unique problems with respect to their property location. Such land uses and developments are identified as special uses in each particular zoning district (see table 106–1098). Analysis and judgment of the consequences of each use and development is necessary to preserve and promote the public health, safety, and welfare.

Beaufort Cnty. Code of Ord. § 106–551 (Art. III, Div. 3, Subdiv. IV) (1999).

■ To the extent the Newtons argue section 106–551 invoked the Table, and therefore section 106–1362, this issue is unpreserved.[8] The Newtons did not identify this argument as a ground for their appeal of the Board's decision. *See* § 6–29–820 (requiring appeal from the Board's decision to be in the form of a "petition in writing setting forth plainly, fully, and distinctly why the decision is contrary to law"). In addition, the record does not reflect that they sought a ruling on it from the master. *See First Union Nat'l Bank of S.C. v. Soden,* 333 S.C. 554, 568, 511 S.E.2d 372, 379 (Ct.App.1998) (holding an issue is unpreserved for appellate review even if it was raised to the master, if he did not rule upon it and appellant failed to seek a ruling through a motion pursuant to Rule 59(e), SCRCP). Accordingly, any connection between section 106–551 and the Table or section 106–1362 is not properly before this court.

To the extent the Newtons challenge the master's finding the Board "only needed to consider the criteria for approval of a special use permit under [section] 106–552," we affirm the

---

8. It is also a less compelling rehash of their similar argument under section 106–1126, discussed in Section II, above.

master's decision but modify the language of the order. In his order, the master examined the Newtons' arguments concerning Article V, Division 2, and determined they did not apply to the situation at hand. Specifically, he found both the Table and section 106–1362 were inapplicable. Nonetheless, the master recognized that Community Preservation districts "are governed by specific standards which are outlined in Appendix D." Although he did not examine Appendix D's provisions,[9] the master clearly was aware the standards enunciated in Appendix D applied to Community Preservation Districts. The master's statement that the Board "only needed to consider the criteria for approval of a special use permit under [section] 106–552" is incongruous with his finding concerning Appendix D. Accordingly, we affirm the master's decision to the extent he found the Board needed to consider the criteria for approval of a special use permit under § 106–552, and not the provisions of Article V, Division 2.

## V. Failure to Require a CIS (Section 106–9(b)(2) and (3))

The Newtons assert the master erred in finding the Board did not abuse its discretion by not requiring a CIS before it issued a permit for the construction of a convenience center on Daufuskie Island. In support, they argue because the Board did not have the studies and assessments required by section 106–9(b)(2) of the Beaufort County Code of Ordinances, it "lacked the legal evidence to support its decision." We decline to reach this argument because it is unpreserved for this court's review. Although the Newtons raised it to the master, he did not rule on it in his final order, and the record does not reflect that the Newtons moved the master to alter or amend the judgment. *See Soden*, 333 S.C. at 568, 511 S.E.2d at 379 (holding an issue is unpreserved for appellate review if it was raised to the master but he did not rule upon it and the appellant failed to seek a ruling through a motion pursuant to Rule 59(e), SCRCP).[10]

9. The record does not reflect that the Newtons presented any arguments under Appendix D to the master, nor did they advance an argument under Appendix D to this court prior to submission of their Reply Brief.

10. At oral argument, the Newtons pointed this court to the decision of the Board, which they claim required a CIS to be developed after the

## CONCLUSION

We find the statute governing appeal from a decision by a zoning board of appeals did not require the Newtons to raise their issues on appeal to the Board in order to preserve them for review by the master. However, we find the Newtons failed to seek a ruling from the master on the issue of whether section 106–9(b) required submission of a CIS for our review. Accordingly, this issue is not preserved for our review.

For the reasons discussed above, we affirm the master's decisions that the standards described in the Table do not govern Community Preservation districts and that section 106–552 did not require the Board to order a CIS.

Furthermore, we find the master's statement that the Board "only needed to consider the criteria for approval of a special use permit under [section] 106–552" apparently conflicts with his recognition that the standards contained in Appendix D to the Code applied to Community Preservation districts such as the one on Daufuskie Island. Consequently, we affirm the master's finding that the Board properly considered the criteria for approval of a special use permit, but we modify his order to hold the Board needed to consider the criteria for approval of a special use permit under § 106–552, and not the provisions of Article V, Division 2.

**AFFIRMED AS MODIFIED.**

SHORT and GEATHERS, JJ., and CURETON, A.J., concur.

---

Board made its decision. We do not read the order in that fashion. Section 106–57 of the Code, (Art. II, Div. 1) (2004), sets forth the responsibilities of the Board vis-à-vis the DRT and states for grants of special use permits, the Board makes the final decision and the DRT only makes recommendations to the Board.