737 S.E.2d 863

Mark BEVIVINO, Alan C. Lincoln, Rhonda S. Lincoln, Karl D. Buckman, Joyce A. Buckman, Charles T. Hallman, Jr., David Freeman, and Patricia Freeman, Appellants,

v.

TOWN OF MOUNT PLEASANT BOARD OF ZONING AP-PEALS, Kent Prause, in his Capacity as Zoning Administrator for the Town of Mount Pleasant, and South Carolina Electric & Gas Co./SCANA Communications, Inc., Respondents.

Appellate Case No. 2010–179648.

No. 5080.

Court of Appeals of South Carolina.

Heard Sept. 12, 2012.

Decided Feb. 6, 2013.

Melinda Adelle Lucka of Finkel Law Firm LLC, of Charleston, for Appellants.

Gary Cleveland Pennington, Kelli Hudson Graham, and Jessica Clancy Crowson, all of Pennington Law Firm LLC, of Columbia for Respondent South Carolina Electric and Gas Co./SCANA; Frances Isaac Cantwell of Regan and Cantwell, of Charleston, for Respondents Town of Mt. Pleasant Board of Zoning Appeals and Kent Prause, in his capacity as Zoning Administrator for the Town of Mount Pleasant.

THOMAS, J.

Appellants Mark Bevivino, Alan C. Lincoln, Rhonda S. Lincoln, Karl D. Buckman, Joyce Buckman, Charles T. Hallman, Jr., David Freeman, and Patricia Freeman challenge a circuit court order that upheld a decision of the Town of Mount Pleasant Board of Zoning Appeals (BZA) to allow Respondents South Carolina Electric and Gas Co./SCANA Communications, Inc. (respectively SCE & G and SCANA) to construct a telecommunications tower. We affirm.

## FACTS AND PROCEDURAL HISTORY

937 Whipple Road is owned by SCE & G and leased to SCANA. It is located in the Town of Mount Pleasant (Town) and adjoins Candlewood, a residential subdivision.

In 2006, property adjacent to the Candlewood subdivision was re-zoned from R–1 to Economic Development (ED). In an ED zoning district, a telecommunications tower is allowed as a "conditional use." Such a use comes with certain conditions that must be met before the Town Zoning Administrator can approve it. Approval of conditional uses are staff level decisions and do not require notification.

In January 2009, SCANA representatives began discussions with the planning staff of the Town of Mount Pleasant (Town) regarding the installation of a telecommunications tower at 937 Whipple Road. Over the next few months, a series of meetings and correspondence exchanges took place between SCANA and the Town Zoning Administrator. Subsequently, SCANA applied for a conditional use permit to construct a tower at the site and later supplemented its application with additional information. By letter dated May 27, 2009, Kent Prause, the Town Zoning Administrator, approved SCANA's application, but with a condition that a "fall zone" plan be prepared by a licensed professional engineer and approved before any required building permits were issued. Prause also stated in his letter that the documents SCANA submitted with its application satisfied other required terms and conditions for telecommunications towers, including health, safety, and aesthetic considerations, as well as attempts either to co-locate on existing towers or to build upon existing buildings and structures. In addition, SCANA, as required by the State Historic Preservation Office, published in the *Post and Courier*, a newspaper of general circulation where the tower was to be located, to solicit comments from interested persons. No comments were received, and the State Historic Preservation Office approved the project.

In June 2009, Prause contacted property owners in Candlewood whose properties abutted the Whipple Road site, as well as to another Candlewood resident who had been involved in prior rezoning issues regarding the site. Prause advised these individuals that a permit for a 195–foot tall telecommuni-

cations tower had been approved. In addition to noting the information was provided "as a courtesy because of your proximity to the site," Prause advised the recipients of their right to contest the decision by appealing to the BZA. No one who received Prause's communication responded.[1]

In July 2009, SCANA filed the required "fall zone" certificate, which verified the wind load capacity of the tower and the radius of its fall in the event of a structural failure. It bore the signature and seal of a professional engineer licensed in South Carolina. A building permit was then issued in October 2009, and construction of the tower took place. Construction of the tower began on October 6, 2009, and was completed on October 20, 2009.

On November 6, 2009, Appellants Alan C. and Rhonda S. Lincoln appealed Prause's authorization of the tower to the BZA. On the same day, Appellant Mark Bevivino also filed an appeal of the decision. All three individuals live in the Candlewood subdivision. In their respective appeals, the Lincolns and Bevivino alleged that (1) the tower was a safety hazard and (2) it detracted from the aesthetics and character of the neighborhood. On November 30, 2009, the BZA held a full evidentiary hearing on the appeals filed by the Lincolns and Bevivino. At the hearing, the remaining Appellants appeared and voiced their concerns; however, none of them were made parties to either of the appeals. By a 4–2 vote, the BZA affirmed Prause's decision. The BZA issued written orders on January 4, 2010.

On February 3, 2010, the Lincolns, Bevivino, and the remaining Appellants filed a petition for judicial review of the BZA orders. The Charleston County Court of Common Pleas held a hearing in the matter on September 13, 2010. By written order dated October 22, 2010, and filed October 26, 2010, the Court of Common Pleas affirmed the BZA decision. In the appealed order, the court found (1) Appellants failed to present evidence that the BZA decision was an error of law regarding safety or aesthetic considerations, (2) Appellants were precluded from raising concerns about co-location, (3) the

---

1. The record indicates that Karl D. Buckman and Joyce A. Buckman were the only recipients of Prause's letter who are also parties to this appeal.

record had ample evidence to support all pertinent considerations regarding the BZA's decision to allow the tower, (4) Bevivino and the Lincolns had standing to pursue their appeal because of the close proximity of their homes to the tower site; (5) the remaining Appellants' attempt to appeal were barred by the doctrine of law of the case, and (6) none of the Appellants could maintain this action under the "public importance" exception to standing. This appeal followed.

## ISSUES

I. Do Appellants have standing to seek redress in the circuit court regarding their opposition to the tower or, in the alternative, can they maintain this action under the public interest exception to standing?

II. Did the BZA commit procedural and substantive errors in allowing SCANA to construct the tower?

III. Are the notice provisions of the applicable Town ordinances against public policy?

## STANDARD OF REVIEW

■ "The findings of fact by the board of [zoning] appeals must be treated in the same manner as a finding of fact by a jury, and the court may not take additional evidence." S.C.Code Ann. § 6–29–840(A) (Supp.2012). In determining the questions on appeal, both the circuit court and the appellate court "must determine only whether the decision of the board is correct as a matter of law." *Id.* "A court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision." *Clear Channel Outdoor v. City of Myrtle Beach,* 372 S.C. 230, 234, 642 S.E.2d 565, 567 (2007). "However, a decision of a city zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Id.*

## LAW/ANALYSIS

### I. Standing

■ We first address Respondents' argument that, except for Bevivino and the Lincolns, Appellants lack standing to pursue this appeal. The circuit court held that these Appellants ("additional Appellants") lacked standing to bring this

action in the circuit court because they did not appeal the staff decision approving the conditional use to the BZA. Reasoning that the additional Appellants failed to avail themselves of their right to appeal to the BZA, as provided in section 6–29–800(B) of the South Carolina Code (Supp.2012), the circuit court held they were bound by Prause's decision, and their attempts to appeal to the circuit court were barred by the doctrine of the law of the case.[2] Based on a decision issued by this court after the briefs in this case were filed, we hold the additional Appellants' failure to join in the appeal to the BZA does not preclude them from participating in the judicial review proceedings in the circuit court or to maintain an appeal in this court.

In *Newton v. Zoning Board of Appeals for Beaufort County*, 396 S.C. 112, 719 S.E.2d 282 (Ct.App.2011), the Newtons appealed the county zoning board's issuance of a special use permit to the circuit court, which affirmed the board's decision, and then appealed to this court. As a threshold issue, the zoning board contended the Newtons' arguments were unpreserved because they failed to raise them to the board during the administrative process. Noting, however, that section 6–29–820(A) of the South Carolina Code (Supp.2012) allows any "person who may have a substantial interest in any decision" by the zoning board to appeal the decision to the circuit court and "does not require an appellant to attend a public hearing on the Board's decision *or even to communicate his concerns to the Board prior to filing his petition with the circuit court*," this court held "the sole preservation requirement for a first-level appeal of a zoning board's decision is that an appellant must set forth his issues on appeal in a written petition and file that petition with the circuit court before the thirty-day filing period expires." *Id.* at 117, 719 S.E.2d at 284 (emphasis added). Here, there was no dispute that the additional Appellants satisfied this requirement. Furthermore,

---

2. Under section 6–29–800(B), appeals to a local zoning board "may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality or county" "within a reasonable time, as provided by the zoning ordinance or rules of the board, or both" or, "[i]f no time limit is provided, ... within thirty days from the date the appealing party has received actual notice of the action from which the appeal is taken." This version of the statute took effect on June 2, 2003.

section 6–29–820(A) allows an appeal to the circuit court by "any person who *may* have a substantial interest" in a zoning board decision. (emphasis added). All Appellants, having satisfied the prerequisites for statutory standing, were entitled to maintain this action in the circuit court. *See Freemantle v. Preston,* 398 S.C. 186, 194, 728 S.E.2d 40, 44 (2012) ("The traditional concepts of constitutional standing are inapplicable when standing is conferred by statute.").

Respondents have also argued the additional Appellants lack constitutional standing and cannot invoke the public importance exception to the standing requirement. Because we hold that the additional Appellants had statutory standing and did not have to appeal the Town's staff decision to the BZA to maintain their appeal in the circuit court, it is unnecessary to address these arguments. *See id.; ATC S., Inc. v. Charleston Cnty.,* 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008) ("Standing may be acquired: (1) by statute; (2) through the rubric of 'constitutional standing;' *or* (3) under the 'public importance' exception.") (emphasis added).

II.  Review of the BZA Decision

Appellants contend the BZA committed the following errors of law as to the lack of compliance with code requirements to have the tower approved:

(1) although the applicable ordinance required a showing that "the proposed structure will not endanger the health and safety of residents," the only evidence that this condition was satisfied was an engineer's letter stating only general expectations about the performance of the structure and what was likely to happen in the event of a structural failure.

(2) as to aesthetic considerations and concerns about the impact of the tower on neighborhood character and the use of neighboring properties, most of the visual evidence only showed the tower in relation to Whipple Road and did not depict the tower from the vantage point of Candlewood subdivision residents.

(3) SCANA did not proffer any evidence regarding attempts to co-locate the tower with an existing tower or to place it on an existing structure.

We hold these arguments fail.

■ As to the first issue, based on the standard of review for both the circuit court and this court, we affirm the circuit court's finding that the BZA's decision was supported by competent evidence that the tower would not endanger the health and safety of nearby residents and other individuals. The manufacturer and an engineer licensed in South Carolina stated that the tower would withstand a wind gust of 130 miles per hour and was designed to fall on itself within a radius of seventy feet of its base in the event of a collapse. These statements were further supported by construction drawings. As further noted by the circuit court, the project underwent scrutiny from the Town building inspector, the Federal Aviation Administration, the Federal Communications Commission, and the Office of Ocean and Coastal Resource Management.

■ As to the aesthetic concerns, the tower is located in an area encompassing diverse property uses, including not only single-family residences such as those in Candlewood, but also utility and industrial uses, overhead electrical easements, institutional uses, lighted ball fields, and multi-family residential complexes. Appellants offered at best only speculative evidence that the tower would detract from their property values.

■ Finally, as to Appellants' claim that SCANA failed to present evidence that it attempted to locate the tower either with other telecommunications facilities or on existing structures, the record includes evidence that SCANA had considered sites where its tower would be co-located with other towers but later determined these other sites were not feasible because SCANA had specific needs that could not be accommodated by the transmission poles already in place, either because the poles were not tall enough or because the coverage objectives of prospective tenants of the tower would necessitate unacceptable interruptions in electrical service during the installation process.

III.  Notice Provisions

SCANA has presented an additional argument in its brief that the notice provisions in the applicable Town ordinances are against public policy because they render an unclear and

ambiguous result that prevents orderly economic development. Specifically, SCANA complains that Appellants were allowed to challenge the tower after SCANA had gone to great lengths to obtain approval for it from the Town based on their claim that they first received "actual notice" of the Town's approval of the tower when they saw the completed structure. Given our disposition of the issues raised by Appellants, it is unnecessary for us to address the question of whether the notice provisions in the zoning ordinances at issue here are against public policy. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when its disposition of a prior issue is dispositive).

## CONCLUSION

We hold all Appellants had standing to pursue judicial review of the BZA's decision and to appeal the circuit court's decision to this court. As to the merits of the appeal, we hold Appellants have not shown that the BZA abused its discretion or that the BZA's decision to allow the tower was arbitrary, capricious, or without reasonable relation to a lawful purpose. We decline to address SCANA's arguments that the notice provisions under which Appellants were allowed to challenge the Town's decision are against public policy.

**AFFIRMED.**

HUFF and GEATHERS, JJ., concur.