# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In Re: Venture Engineering, agent for DT LLC,
Respondent,

v.

Horry County Zoning Board of Appeals, Appellant.

Appellate Case No. 2018-001221

Appeal from Horry County
Larry B. Hyman, Jr., Circuit Court Judge
Benjamin H. Culbertson, Circuit Court Judge

Opinion No. 5819
Heard February 2, 2021 – Filed May 12, 2021

**REVERSED**

Matthew R. Magee, of Thomas & Brittain, P.A., of
Myrtle Beach, for Appellant.

Robert S. Shelton, of Bellamy, Rutenberg, Copeland,
Epps, Gravely & Bowers, P.A., of Myrtle Beach, for
Respondent.

**GEATHERS, J.:** Appellant Horry County Zoning Board of Appeals (the Board)
challenges the circuit court's order in consolidated appeals from two Board
decisions. The circuit court reversed both decisions, which (1) prohibited a client of
Respondent Venture Engineering (Venture) from receiving construction and
demolition debris from outside sources for recycling and (2) denied Venture's

request for three variances from the zoning ordinances governing concrete recycling businesses.  The Board argues the circuit court erred by failing to properly apply the appropriate standard of review to each appeal.  The Board also argues the circuit court erred by (1) consolidating the two appeals and (2) considering material outside the respective records on appeal.  We reverse the circuit court's order allowing Venture's client to receive demolition debris from outside sources as well as its order granting costs to Venture.[1]

## FACTS/PROCEDURAL HISTORY

In January 1981, Arthur Thompkins, Jr. established Thompkins & Associates, Inc. (Thompkins) for the purpose of operating heavy equipment for construction and demolition projects.[2]  Thompkins maintained its equipment and office at 310 Piling Road in Myrtle Beach (the Property) within the historic Pine Island Residential District.[3]  Another business operated a concrete plant next to the Property but ceased operating at some point before the Board considered the two cases now before the court.

When Thompkins began operating in 1981, the Property was not zoned. According to the Board, in 1987, Horry County enacted its first zoning ordinance and designated the zone in which the Property was located as Limited Industrial (LI), which allows light industrial uses that are "not significantly objectionable in terms of noise, odor, fumes, etc., to surrounding properties."  Horry County Code of Ordinances § 717.  This zoning classification prohibits "noise, vibration, smoke, gas, fumes, odor, dust, fire hazards, dangerous radiation or any other conditions [that] constitute a nuisance beyond the premises."  Horry County Code of Ordinances § 717.1(P).

---

[1] Because we reverse the circuit court's orders on the ground that the circuit court failed to properly apply the appropriate standards of review, we need not address the Board's remaining arguments.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

[2] At some point, Arthur's son, Dennis Thompkins, took over the business, and DT, LLC became the Property's owner.  For the purpose of consistency, we will refer to Dennis Thompkins and DT, LLC collectively as "Thompkins" throughout the remainder of this opinion.

[3] This community has been inhabited since the 1700s.

According to Thompkins, since it began operating in 1981, the Construction & Demolition (C&D) division of its business "has crushed, processed, and/or recycled both: (1) C&D material from Thompkins' own demolition projects; and (2) C&D material received from outside sources." Most of the material received from outside sources was from demolished buildings that had "block and reinforced concrete." The business accepted only concrete and masonry for recycling. Also, according to Thompkins, (1) in 2007, it was "required to apply for a business license in order to continue operating in its new zoning district"; (2) the license approved of the recycling activity as an accessory use to what was designated on the license as the principal use of the Property,[4] "Construction Heavy Equipment"; and (3) in 2014, a potential investor in the business sought a "zoning compliance letter" from the Horry County Zoning Administrator, Rennie Mincey, to ensure Thompkins was complying with the County's zoning requirements.

In response to the request of Thompkins' investor, the Zoning Administrator determined that because the recycling activity on the Property was approved as an accessory use only, Thompkins was not authorized to accept construction materials from outside contractors for recycling. Thompkins appealed this determination to the Board, which heard the appeal over the course of four meetings in 2015. At the conclusion of its April 13, 2015 meeting, the Board voted to overturn the Zoning Administrator's determination. It is undisputed that this vote would not have been final until the Board could approve the April meeting minutes at its next meeting on May 11, 2015. However, at the beginning of the May meeting, before approving the April minutes, the Board entertained a motion to reconsider the April 13 vote.

The motion had not been included as an agenda item in the public notice of the May meeting, but the County's planning director had telephoned Thompkins' counsel to advise him that it would be considered at the meeting. During the meeting, several individuals residing in the surrounding community testified to express their concerns. All of the residents who testified at the May 2015 meeting were under the mistaken impression that a landfill was going to be located on the Property. Some of these residents also expressed dissatisfaction with noise and dust in the community, but it is unclear whether they were referring to Thompkins' operations or the concrete plant's operations next-door.

---

[4] Horry County defines "Accessory use" as "[a] use of land or of a building, or portion thereof, [that] is customarily incidental and subordinate to the principal use of the land or building." Horry County Code of Ordinances § 401.5. "Accessory uses must be located on the same lot with the principal use." *Id.*

The Board ultimately upheld the Zoning Administrator's determination. Thompkins then filed a notice of appeal of the Board's May 11, 2015 order with the circuit court. Several months later, the circuit court issued a consent order for a six-month continuance of the final hearing so that Thompkins could seek a resolution of its dispute with the Board by way of a variance petition. Subsequently, Thompkins, through counsel, retained Venture to assist with the submission of the variance petition to the Board. Venture filed a variance petition with the Board on Thompkins' behalf, and the Board heard the petition on March 14, 2016.

At the hearing, Venture's President, Steve Powell, testified that in 1985, his firm had taken demolition materials from another contractor to Thompkins' business for recycling, adding: "So, I can state from personal experience that materials have been going to this site since well before the zoning was adopted in 1987." Powell later stated: "It was the only site that almost any contractor in building demolitions could take material to for recycling," and "they've been doing that here continuously since 1981." He explained that when Thompkins had to apply for a business license in 2007, no one recognized the significance of the accessory use designation on the license and it was "completely different from what [they had] done."

Some residents disputed Powell's testimony. Janice Dowe testified Powell's claim that Thompkins had been accepting material from other contractors for thirty-five years was "false" because she had lived in the surrounding community for the same amount of time and the community "didn't have this crushing when [she] originally [moved] out there." Wesley Finley testified: "I'm coming up on my thirtieth anniversary[,] and I can guarantee you there was no plant there thirty years ago . . . . There was no noise there."

The Board issued an order denying the variance petition, and Venture appealed this order. On April 5, 2018, the circuit court reversed the Board's order upholding the Zoning Administrator's determination as well as the Board's order denying Venture's variance petition. The circuit court later denied the Board's motion for reconsideration and granted Venture's motion for costs. This appeal followed.

## STANDARD OF REVIEW

In reviewing a decision of a zoning board of appeals, this court applies the same standard of review as the circuit court. *Boehm v. Town of Sullivan's Island Bd. of Zoning Appeals*, 423 S.C. 169, 182, 813 S.E.2d 874, 880 (Ct. App. 2018). Section 6-29-840 of the South Carolina Code (Supp. 2020) requires the circuit court to treat

the findings of fact by a zoning board of appeals "in the same manner as a finding of fact by a jury," and "[i]n determining the questions presented by the appeal, the court must determine only whether the decision of the board is correct as a matter of law." In other words, the decision of a zoning board of appeals must not be disturbed if there is supporting evidence in the record. *Rest. Row Assocs. v. Horry Cty.*, 335 S.C. 209, 215, 516 S.E.2d 442, 446 (1999); *Boehm*, 423 S.C. at 182, 813 S.E.2d at 880. Further, a court must not substitute its judgment for that of the board, "even if it disagrees with the decision." *Rest. Row Assocs.*, 335 S.C. at 216, 516 S.E.2d at 446.

Nonetheless, a reviewing court "may rely on uncontroverted facts [that] appear in the record, but not in a zoning board's findings." *Vulcan Materials Co. v. Greenville Cty. Bd. of Zoning Appeals*, 342 S.C. 480, 491, 536 S.E.2d 892, 898 (Ct. App. 2000). Moreover, a board's decision "will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Rest. Row Assocs.*, 335 S.C. at 216, 516 S.E.2d at 446. "An abuse of discretion occurs when a [tribunal's] decision is unsupported by the evidence or controlled by an error of law." *Boehm*, 423 S.C. at 182, 813 S.E.2d at 880 (quoting *Newton v. Zoning Bd. of Appeals for Beaufort Cty.*, 396 S.C. 112, 116, 719 S.E.2d 282, 284 (Ct. App. 2011)).

## LAW/ANALYSIS

The Board asserts that the circuit court failed to give deference to the Board as required by the respective standards of review for each appeal. We agree.

### A. Zoning Appeal

In its decision upholding the Zoning Administrator's determination, the Board found that Thompkins' recycling business was approved in 2007 as an accessory use "to the existing construction heavy equipment business that was located on the site in 1981." The Board restated the Zoning Administrator's determination that the recycling of construction material "is approved as an accessory use to a construction and heavy equipment business that was approved on the site prior to zoning of [the Property]." The Board also found that the recycling business could continue as an accessory use but was not permitted to receive materials from other contractors and would have to cease operating altogether "[s]hould the approved Construction Heavy Equipment business use cease operation" at its current location. Without further findings or conclusions of law, the Board stated that it was upholding the Zoning Administrator's decision.

On appeal, the circuit court relied on three grounds to reverse the Board's decision. Before addressing these, we hold that the Board's decision was correct as a matter of law for two reasons: (1) the zoning classification for the Property did not permit Thompkins' acceptance of construction debris from other contractors for recycling and (2) the activity of taking outside debris does not qualify as an accessory use. The County designated the zone in which the Property was located as Limited Industrial (LI), which allows light industrial uses that are "not significantly objectionable in terms of noise, odor, fumes, etc., to surrounding properties." Horry County Code of Ordinances § 717. This zoning classification prohibits "noise, vibration, smoke, gas, fumes, odor, dust, fire hazards, dangerous radiation or any other conditions [that] constitute a nuisance beyond the premises." Horry County Code of Ordinances § 717.1(P). At the Board's February 2015 meeting, Wayne Grissett's testimony indicated that Thompkins' recycling operations contributed to the dust encountered by its neighbors. Therefore, the recycling does not qualify as a principal use under section 717.

Further, Horry County defines "accessory use" as "[a] use of land or of a building, or portion thereof, [that] is customarily incidental and subordinate to the principal use of the land or building." Horry County Code of Ordinances § 401.5. This definition is similar to the description of an accessory use found in case law. *See Whaley v. Dorchester Cty. Zoning Bd. of Appeals*, 337 S.C. 568, 579, 524 S.E.2d 404, 410 (1999) ("Accessory uses are those [that] are customarily incident to the principal use."); *id.* ("An accessory use must be one 'so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it.'" (quoting *Borough of Northvale v. Blundo*, 203 A.2d 721, 723 (N.J. Super. Ct. App. Div. 1964))); *see also* 101A C.J.S. *Zoning and Land Planning* § 148 (2021) ("Generally, the uses of property *permitted in particular zones* by a zoning ordinance or regulation include accessory uses customarily incident to the permitted uses." (emphasis added)); *id.* ("'Accessory use' refers to uses customarily incidental to the *listed permitted uses in a district*." (emphasis added) (citing *Capelle v. Orange Cty.*, 607 S.E.2d 103, 106 (Va. 2005))). We are convinced that Thompkins' recycling of materials from other contractors is not "customarily incidental and subordinate to" the maintenance of his heavy construction equipment on the Property. Because this use cannot qualify as an accessory use, the circuit court should have affirmed the Board's decision on this basis. *See* § 6-29-840(A) ("In determining the questions presented by the appeal, the court must determine only whether the decision of the board is correct as a matter of law.").

Instead, the circuit court relied on three grounds to reverse the Board's decision, the first of which was its conclusion that there was no "legal basis" for the Board's "distinction" between Thompkins' recycling of its own debris and its recycling of debris from other contractors. This conclusion necessarily rests on the premise that the Board squarely ruled on the issue of whether Thompkins' recycling of its own debris meets the County's definition of accessory use in section 401.5. The Board made no such ruling. Rather, the Board summarily stated that the recycling business approved in 2007 "may continue as an accessory use to the Construction Heavy Equipment business approved on the site" and it was upholding the Zoning Administrator's determination that the business was "not permitted to receive and process materials from other contractors." We infer from the record that the Board's **factual** basis for the distinction was the decrease in the amount of dust and noise imposed on Thompkins' neighbors that would result from prohibiting Thompkins from recycling other contractors' debris.

We acknowledge that the Zoning Administrator's predecessor designated Thompkins' recycling business as an "accessory use" on Thompkins' business license in 2007. However, nothing in the record suggests the 2007 designation was ever challenged on its underlying merits and subsequently upheld by the Board,[5] and the issue of whether Thompkins' recycling of its own debris met the County's definition of accessory use was not squarely before the Board in the present case. Therefore, the Board did not need to make a legal distinction between Thompkins' recycling of its own debris and its recycling of debris from other contractors.

Next, the circuit court concluded that the Board's order was arbitrary and capricious because (1) at the Board's April 2015 meeting, Thompkins presented "overwhelming, credible evidence" that it had been receiving material from outside contractors prior to the issuance of its business license in 2007;[6] therefore, the Board

---

[5] *See Pelullo v. Croft*, 18 N.E.3d 1092, 1095 (Mass. App. Ct. 2014) ("[T]he right of the public to have the zoning by-law properly enforced cannot be forfeited by the actions of a municipality's officers. Nor can a permit legalize a structure or use that violates a zoning by-law." (quoting *Building Comm'r of Franklin v. Dispatch Commc'ns of New England, Inc.*, 725 N.E.2d 1059, 1066 (Mass. App. Ct. 2000))); *cf. Nemeth v. K-Tooling*, 955 N.Y.S.2d 419, 423 (N.Y. App. Div. 2012) (holding that the issuance of a building permit "cannot confer rights in contravention of the zoning laws" (quoting *City of Buffalo v. Roadway Transit Co.*, 104 N.E.2d 96, 100 (N.Y. 1952))).

[6] Thompkins presented numerous "load tickets" ostensibly documenting its receipt of other contractors' material during November and December 2006.

properly voted to reverse the Zoning Administrator's determination; (2) the Board failed to explain its reconsideration of its April 2015 decision; and (3) reconsideration of the April decision was not listed as an agenda item in the public notice of the May 2015 meeting, yet several residents in the surrounding community appeared at that meeting, indicating someone had informed them a landfill was going to be located on the Property. The circuit court was heavily influenced by Thompkins' assertion of improper influence by an employee of the County's Solid Waste Authority, as summarized in the circuit court's order.[7] However, our review of the record reveals no direct evidence of nefarious activity or improper influence on the Board's decision. Further, the Board's decision was correct as a matter of law because the zoning classification for the Property did not permit Thompkins' acceptance of construction debris from other contractors for recycling and the activity of taking outside debris does not qualify as an accessory use.

The circuit court's third ground for reversing the Board's May 2015 decision was its conclusion that Thompkins had a vested right to continue accepting material from outside sources for recycling because it began this use before the County enacted its first zoning ordinance and, thus, it was a legal nonconforming use. *See Whaley*, 337 S.C. at 578, 524 S.E.2d at 409–10 ("A landowner acquires a vested right to continue a nonconforming use already in existence at the time of a zoning ordinance absent a showing [that] the continuance of the use constitutes a detriment

---

[7] Specifically, the circuit court found that between April and May 2015, Thompkins "was informed an individual from [the] Solid Waste Authority was contacting members of the Board in an effort to persuade the Board members to reconsider their votes," and Thompkins' counsel "addressed this concern in a letter to counsel for Horry County." The circuit court further stated: "Subsequently, [Thompkins] was informed by [the] Horry County Planning Director . . . [that] the Board was going to move to reconsider its vote overturning [the Zoning Administrator's] decision at their May 11, 2015 Board Meeting."

The circuit court also found that at the Board's May 2015 meeting, the Board moved to reconsider its vote and residents in the surrounding community appeared and "voiced unsubstantiated complaints about Thompkins' business" despite the fact that the reconsideration had not been listed as an item on the Board's published agenda. The circuit court added, "These persons' complaints strongly suggest to the [c]ourt that, between April and May 2015, someone told residents near the Property that Thompkins was going to begin taking in and recycling compost/trash, which Thompkins had never done and did not seek to do."

to the public health, safety, or welfare.").  However, the record for the zoning appeal, as opposed to the variance appeal, does not support the circuit court's conclusion.

Although evidence of a nonconforming use was presented at the Board's hearing on the variance request, this hearing occurred approximately ten months after the Board's hearing to review the Zoning Administrator's determination, and therefore, the Board did not have the benefit of this evidence when it issued its order upholding the Zoning Administrator's determination.  Further, the circuit court erred in relying on counsel's arguments before the Board as evidence of a nonconforming use.  *See S.C. Dep't of Transp. v. Thompson*, 357 S.C. 101, 105, 590 S.E.2d 511, 513 (Ct. App. 2003) ("Arguments made by counsel are not evidence."); *McManus v. Bank of Greenwood*, 171 S.C. 84, 89, 171 S.E. 473, 475 (1933) ("This court has repeatedly held that statements of fact appearing only in argument of counsel will not be considered.").

The circuit court also erred in relying on the testimony of two individuals working in the construction industry in Horry County because these individuals did not provide any specific dates.  They merely indicated that Thompkins had been recycling concrete for other contractors "for years."  Therefore, the circuit court's conclusion that Thompkins had a vested right to continue accepting material from outside sources did not have any evidentiary support in the record for the zoning appeal.

Based on the foregoing, the circuit court erred by reversing the Board's decision in the zoning appeal.

### B. Variance Appeal

In reviewing a zoning board's decision on a request for a variance from a zoning ordinance's requirements, the circuit court must consider not only the general standard of review from a zoning board's decision but also the specific standards for granting a variance.  Section 6-29-800(A)(2) of the South Carolina Code (Supp. 2020) prohibits the granting of a variance unless "strict application of the provisions of the ordinance would result in unnecessary hardship" to the applicant and the board "makes and explains in writing the following findings:

> (a) there are extraordinary and exceptional conditions pertaining to the particular piece of property;

(b) these conditions do not generally apply to other property in the vicinity;

(c) because of these conditions, the application of the ordinance to the particular piece of property would effectively prohibit or unreasonably restrict the utilization of the property; *and*

(d) the authorization of a variance *will not be of substantial detriment to adjacent property or to the public good, and the character of the district will not be harmed by the granting of the variance.*

> (i) The board may not grant a variance, the effect of which would be to allow the establishment of a use not otherwise permitted in a zoning district, to extend physically a nonconforming use of land or to change the zoning district boundaries shown on the official zoning map. The fact that property may be utilized more profitably, if a variance is granted, may not be considered grounds for a variance. Other requirements may be prescribed by the zoning ordinance.

(emphases added). "Granting a variance is an exceptional power [that] should be sparingly exercised and can be validly used only [when] a situation falls fully within the specified conditions." *Rest. Row Assocs.*, 335 S.C. at 215, 516 S.E.2d at 445–46.

In its decision denying the variance request, the Board cited the factors set forth in section 6-29-800(A)(2) and found that in 2007, a certificate of zoning compliance was issued for the recycling business "as an accessory use to the existing construction and heavy equipment business." The Board also found that Thompkins was not then permitted "to receive and process material from other contractors" but was proposing to do so in its variance application. The Board noted that a rezoning of the Property to "MA3 (Heavy/Intense Manufacturing and Industrial District)" was required to allow the proposed use and Thompkins was seeking a variance from three requirements for an MA3 district, i.e., (1) all proposed plant sites shall be located a minimum of five hundred feet from any residential lot; (2) all processing plants shall be located in fully enclosed structures; and (3) the site must be screened through

enhanced buffers around the entire work area (with an opening for approved entrances) if located within one thousand feet of a residential area.[8] The Board's order included a section for conclusions of law, but the sole conclusion was that Thompkins' request did not meet "the criteria set forth in Horry County Code § 1404(B) and S.C. Code Ann. § 6-29-800."[9]

On appeal, the circuit court concluded that it did not need to reach the issues due to its disposition of the zoning appeal. Nevertheless, the circuit court relied on two additional grounds to reverse the Board's decision. First, the circuit court concluded that the Board's decision was arbitrary because Thompkins met the factors set forth in section 6-29-800(A)(2). We disagree.

Although the Board's written order failed to set forth any reasoning, the hearing transcript and the Board's minutes indicate the Board's decision was supported by the testimony of residents in the surrounding community expressing concerns about particulates, noise, and traffic.[10] Additionally, the Board's minutes recount a Board member's statement that the Board "had concerns with the nuisance, airborne particulates[,] and the traffic from the heavy trucks." Therefore, the neighbors' testimony likely persuaded the Board to conclude that the requested variances would be a "substantial detriment" to surrounding residences and would harm the surrounding community's character. *See* § 6-29-800(A)(2)(d) (requiring a finding that the variance will not be a substantial detriment to adjacent property or

---

[8] Specifically, Thompkins requested a variance from the requirement that the business must be separated from residential lots by at least five hundred feet and sought to perform recycling operations in the open rather than in a fully enclosed structure. Thompkins also proposed an earthen berm on one side of the property in addition to its existing landscaping rather than meeting the code's specifications for the enhanced buffer.

[9] The language of Horry County Code section 1404(B) is virtually identical to the language in section 6-29-800(A)(2).

[10] *See Vulcan*, 342 S.C. at 494, 536 S.E.2d at 899 ("Generally, the format of a final decision is immaterial as long as the substance of the decision is sufficiently detailed so as to allow a reviewing court to determine if the decision is supported by the facts of the case."); *cf. Austin v. Bd. of Zoning Appeals*, 362 S.C. 29, 35, 606 S.E.2d 209, 212 (Ct. App. 2004) (holding that reading the hearing transcript together with a letter informing the applicant of the board's decision provided a "sufficient basis for a reviewing court to determine whether the decision was supported by the facts of the case" because the evidence was "clearly laid out in the transcript" and the issue raised to the board was limited to a narrow factual question).

to the public good and the character of the district will not be harmed). Reaching such a conclusion is a judgment call that is exclusively within the Board's province. *See Rest. Row Assocs.*, 335 S.C. at 216, 516 S.E.2d at 446 (holding that a court must not substitute its judgment for that of the board, "even if it disagrees with the decision").

The circuit court also concluded that Thompkins had a vested right to continue accepting material from outside contractors because it began this use before the County enacted its first zoning ordinance. *See Whaley*, 337 S.C. at 578, 524 S.E.2d at 409–10 ("A landowner acquires a vested right to continue a nonconforming use already in existence at the time of a zoning ordinance absent a showing [that] the continuance of the use constitutes a detriment to the public health, safety, or welfare."). Although the circuit court cited only counsel's arguments before the Board, Venture's President, Steve Powell, gave supporting testimony at the Board's March 14, 2016 hearing. Nonetheless, Thompkins cannot acquire a vested right to continue the nonconforming use if there is a showing that continuing the use "constitutes a detriment to the public health, safety, or welfare." *See id.* The testimony of Thompkins' neighbors constituted such a showing. Therefore, the circuit court erred in reversing the Board's decision on the ground that Thompkins had a vested right to continue accepting material from outside contractors. *See Rest. Row Assocs.*, 335 S.C. at 215, 516 S.E.2d at 446 (holding that the decision of a zoning board of appeals must not be disturbed if the record includes supporting evidence).

Based on the foregoing, the circuit court erred by reversing the Board's decision in the variance appeal.

## CONCLUSION

Accordingly, the circuit court's order on the merits and its order granting costs to Venture are

**REVERSED.**

**KONDUROS and MCDONALD, JJ., concur.**