**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Beachwalk Hotel & Condominiums Association, Inc. and Beachwalk Hilton Head, LLC, Appellants,

v.

The Town of Hilton Head Island and/or The Town of Hilton Head Island Board of Zoning Appeals, and SDC Properties, Inc., Respondents.

Appellate Case No. 2020-000617

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

———————

Unpublished Opinion No. 2023-UP-232
Heard April 12, 2023 – Filed June 7, 2023

———————

**AFFIRMED**

———————

Thomas C. Taylor, of Law Offices of Thomas C. Taylor, LLC, of Bluffton; and Kathleen McColl McDaniel, of Burnette Shutt & McDaniel, PA, of Columbia, both for Appellants.

Gregory Milam Alford, of Alford Law Firm LLC, of Hilton Head Island; and Brian Earl Hulbert, of Beaufort, both for Respondent The Town of Hilton Head Island and

The Town of Hilton Head Island Board of Zoning Appeals.

Stephen Harrison Williams, of Shelton Law Firm, LLC, of Hilton Head Island; and William Lamar Johnson, II, and Barry L. Johnson, both of Johnson & Davis, PA, both of Bluffton, all for Respondent SDC Properties, Inc.

---

**PER CURIAM:** Beachwalk Hotel & Condominiums Association, Inc. (Beachwalk) appeals the master in equity's decision upholding development approvals granted by the Town of Hilton Head Island Board of Zoning Appeals and the Town's planning staff. Beachwalk argues that the approving authorities did not properly consider the density requirements in an overlay zoning district when evaluating the proposed development. Beachwalk also argues the approval was impermissibly based, at least in part, on a finding that the subject property would have no economic value if Beachwalk prevailed.

**STANDARD OF REVIEW**

"[S]ection 6-29-840 [of the South Carolina Code (Supp. 2022)] prescribes the standard of review a circuit court should apply when considering an appeal from a local zoning board." *Austin v. Bd. of Zoning Appeals*, 362 S.C. 29, 35, 606 S.E.2d 209, 212 (Ct. App. 2004). The statute provides "[t]he findings of fact by the board of appeals must be treated in the same manner as a finding of fact by a jury, and the court may not take additional evidence." S.C. Code Ann. § 6-29-840(A) (Supp. 2022). A jury's factual findings will not be disturbed on appeal unless the record contains no evidence reasonably supporting the jury's findings. *Austin*, 362 S.C. at 35, 606 S.E.2d at 212.

We apply the same standard here. "In reviewing the questions presented by the appeal, the court shall determine only whether the decision of the [b]oard is correct as a matter of law." *Id*. at 33, 606 S.E.2d at 211. "However, a decision of a municipal zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Id*. (quoting *Rest. Row Assocs. v. Horry County*, 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999)). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *Newton v. Zoning Bd. of Appeals for Beaufort Cnty.*, 396 S.C. 112, 116, 719 S.E.2d 282, 284 (Ct. App. 2011) (quoting

*County of Richland v. Simpkins*, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002)).

**CONSIDERATION OF OVERLAY DISTRICT**

Beachwalk argues that local planning officials failed to properly consider the density of the existing development in the PD-2 District when reviewing the plan to construct a welcome center on the parcel in question, Parcel E. Beachwalk asserts the existing development in the PD-2 District already exceeds the allowed density in the current ordinances and there can be no further development in the district as a consequence.

We respectfully disagree. Although the record in this case is complicated, as we will explain, we think there is no question the local planning officials considered the existing density and the density regulations when approving this development.

In 1987, Hilton Head's town council granted a special exception/conditional use permit and approved a master plan for the overlay district that is involved—the PD-2 District. These documents, which we collectively refer to as the 1987 documents, set precise density limits for this overlay district and were specifically approved by the Town Council. *See* Hilton Head Island, S.C., Code § 16-3-106.G.5 (indicating the PD-2 District's approved 1987 master plan was incorporated by reference into the Town's official zoning map and land management ordinances). This approval resulted in the master plan becoming part of the Town's official ordinances and zoning map.

There is no indication in the record that the density limits permitted under the 1987 documents expired or were revised. The Town's ordinances indicate that future construction in the district must follow whichever density limits—the base zoning district under the land management ordinance or the overlay district's requirements—are more restrictive. *See* Hilton Head Island, S.C., Code § 16-1-106.A.1 ("When any [land management ordinance] provision is inconsistent with another [land management ordinance] provision, or a provision found in other adopted codes or ordinances of the Town, the more restrictive provision shall govern unless the terms of the more restrictive provision specify otherwise. The more restrictive provision is the one that imposes greater restrictions or burdens, or more stringent controls." (emphasis omitted)). The proposed development passes both tests. The project is a 7,500 square foot welcome center on Parcel E, which is 1.068 acres. This is permitted under the current land management ordinance: the base district has a density limit of 8,000 square feet per net acre, which would allow 8,544

square feet of nonresidential use on Parcel E. *See* Hilton Head Island, S.C., Code § 16-3-105.L.3 (limiting nonresidential density in the underlying RD district to 8,000 square feet per net acre). It is also permitted under the 1987 documents: those documents, which became part of the land management ordinance when they were approved, leave 16,787 square feet of available commercial office density remaining for use throughout the district.[1] Therefore, the local planning officials' decision to permit the development was not an abuse of discretion and was also not arbitrary or capricious.

A large part of Beachwalk's argument focuses on the ordinance's mandate that, "The average density for the PD-2 Overlay District shall not exceed the maximum density permitted in the base zoning district." Hilton Head Island, S.C., Code § 16-3-106.G.4.a (emphasis omitted). The ordinance does not define "average density," and when the ordinance discusses density, it mandates that residential and nonresidential densities should not be added together. Hilton Head Island, S.C., Code § 16-10-102.B.2. The record suggests the local planning official reasoned that the Town considered average density when it approved the 1987 documents and that the approval established the average densities that would be allowed in this district. We cannot say the planning official clearly erred in adopting this interpretation or that the board of zoning appeals clearly erred in letting the approval stand.

Beachwalk believes that average density should be calculated with the ordinance's present density requirements for a planned unit development (PUD) and correctly observes the ordinance would not allow a PUD to be developed in this way if the development was started today, from scratch. We take the point, and it is a good one. Even so, the reason we think it misfires is because this development has an approved master plan. It is not starting from scratch. We cannot say it was arbitrary or capricious for the Town to let the local planning official's interpretation of the local ordinance stand as setting average density limits for this district when the Town approved the 1987 documents and incorporated that approval into the land management ordinance.

One last point on this issue: the 1995 "categorical exemption" for this development has no bearing on this case. The categorical exemption would have completely freed any development from complying with the local ordinance while the exemption was

---

[1] The 1987 documents approved 21,913 square feet of commercial office space for the district. There is 5,126 square feet of commercial office space that has already been built. That leaves 16,787 square feet of commercial office space density available.

in effect.  Now that the exemption has expired, the development is bound by the master plan or the base zoning district, whichever is stricter.  As explained above, local officials reasonably concluded that this proposed development is within the base district's and master plan's allowable density.

**LOSS OF ECONOMIC VALUE**

As already noted, Beachwalk argues the master erred in basing his decision in part on a finding that there would be no economic utility for Parcel E if Beachwalk prevailed.

Our finding that the local planning officials did not clearly err in their interpretation of the land management ordinance is dispositive, so we will not address this argument.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

**CONCLUSION**

Based on the foregoing, the master's order is

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**